## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 5:21-CR-41 (CJN)** |
| | : | |
| **BRADLEY RUKSTALES,** | : | |
| | : | |
| *Defendant.* | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence defendant Bradley Rukstales to 45 days of incarceration and $500 in restitution.

### I.      Introduction

Rukstales participated in the January 6, 2021, attack on the United States Capitol – a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured over 100 law-enforcement officers, and resulted in over $1.4 million worth of property damage.

Rukstales stands before this Court to be sentenced on a misdemeanor conviction, but his conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm law enforcement, breach the Capitol, and disrupt the proceedings.  But for his actions alongside so many others, the riot likely would have failed.

The government is requesting a 45-day term of incarceration based on an assessment of the relevant sentencing factors.  Rukstales engaged in disruptive conduct inside the Capitol when he threw a chair in the direction of officers who had been forced to hastily retreat from encroaching rioters in the Capitol Visitor Center ("CVC").  After officers began arresting rioters in the CVC and a melee broke out in full view of Rukstales, with officers struggling to subdue multiple rioters who were resisting arrest, Rukstales remained in the thick of that chaos and did not leave.  He was brought to the floor by an officer, did not comply with the officer's attempts to get him up from the floor, and needed to be dragged by two police officers behind a police line so he could be arrested.

II.     **Factual and Procedural Background**

*The January 6, 2021, Attack on the Capitol*

To avoid exposition, the government refers to the general summary of the attack on the Capitol in ECF No. 90, at 1-3.  As this Court knows, a riot cannot occur without rioters, and each rioter's actions—from the most mundane to the most violent—contributed, directly and indirectly, to the violence and destruction of that day.

*Rukstales's Role in the January 6, 2021, Attack on the Capitol*

Rukstales traveled from Illinois to attend the rally President Donald Trump planned to hold in Washington, D.C., on January 6, 2021.  On that date, Rukstales eventually made his way to the Capitol.

By the time Rukstales entered the Capitol, U.S. Capitol Police ("USCP") officers had already been under attack by rioters outside the building and fell back to a makeshift recovery area they had established in the Capitol Crypt.  Before long, rioters also breached that recovery area, and began throwing objects and unknown liquid substances at the officers.  The officers hastily

retreated down a stairwell to the CVC, which is also part of the Capitol.  Some rioters threw chairs

at the officers.  At approximately 2:30 p.m., surveillance video captured officers retreating down

the stairwell as chairs tumbled behind them, as depicted in this screenshot (officers circled in blue):



The officers then drew back to the end of a corridor in the CVC that led to an atrium on the House

of Representatives side of the Capitol.

Less than 30 seconds after the officers scrambled down the stairwell and to the corridor,

Rukstales descended the stairwell, wearing a red hat, brown jacket, and red and white sweater, as

depicted in this screenshot and close-up of the screenshot (circled in red):





Rukstales picked up one of the chairs strewn about the base of the stairwell and hurled it in the direction of where the officers had retreated down the corridor (Rukstales circled in red, and chair in mid-air motion circled in yellow):







By the time Rukstales threw the chair, the officers were dozens of feet away from Rukstales and were not in danger of being hit.

Rukstales (circled in red) continued walking toward the end of the corridor, looking in the direction of the officers' defensive line:



Eventually, Rukstales made his way near the end of the corridor.  Other rioters also gathered there and met the police line.  The officers issued commands for the rioters to leave the building.  When rioters refused, the officers began arresting individuals who had unlawfully entered the building, including Rukstales.  A melee ensued, with officers tackling multiple rioters resisting arrest, and onlookers jumping and running around, gesturing, gawking at, and appearing to egg on other rioters, while some others fled the area, as depicted in these sequential screenshots:









Rukstales did not leave the area; he remained in the middle of the scrums that had broken out between rioters and officers.  At one point, an officer brushed up against Rukstales from behind, and Rukstales's arm stretched out in the officer's direction (Rukstales outlined in red):



The officer immediately turned around, grabbed Rukstales, and brought him to the ground, as other rioters gathered around Rukstales:





As another rioter wearing a red hat and suit attempted to pull Rukstales away from the officer, a second officer responded and brushed away that rioter.

The first officer attempted multiple times to pull Rukstales up from the floor, but Rukstales remained on the ground:



At one point, Rukstales's red hat fell off his head, and Rukstales clawed at the hat to put it back on, but still did not get up on his feet.

Ultimately, a third officer was needed to subdue Rukstales, and he and the first officer grabbed Rukstales by his clothing and dragged him several yards to the end of the corridor and behind their defensive line to be arrested:



According to the USCP officer who processed Rukstales's arrest, Rukstales was compliant post-arrest.

On January 7, 2021, Rukstales issued a statement on Twitter in which he stated he had engaged in "extremely poor judgment" by entering the Capitol and claimed he had followed others into the building "to see what was taking place inside." He also admitted his decision to enter was "wrong," and he was "deeply regretful." He further stated, "Without qualification and as a peaceful and law-abiding citizen, I condemn the violence and destruction that took place in Washington," as depicted in this screenshot of the tweet:



In addition, on January 7, 2021, Rukstales gave a statement to a local news reporter who showed up at his home in Illinois. During that interview, Rukstales said:

> [I]t was great to see a whole bunch of people together in the morning [of January 6] and hear the speeches, but . . . it turned into . . . chaos. . . . I had nothing to do with charging anybody or anything or . . . any of that. . . . I was in the wrong place at the wrong time, and I regret my part in that. . . . Everything that happened yesterday, I think, was absolutely terrible. . . . I'm sorry for my part in it. . . . I think the violence was terrible.[1]

Rukstales knew at the time he entered the Capitol that he did not have permission to enter the building and he paraded, demonstrated, or picketed inside the building.

*The Charges and Plea Agreement*

Rukstales was initially arrested at the Capitol on January 6, 2021, and issued a summons to return to D.C. Superior Court. On January 7, 2021, Rukstales was charged by complaint with violating 18 U.S.C. § 1752(a) and 40 U.S.C. § 5104(e)(2). On January 11, 2021, he was rearrested on the federal complaint after he turned himself in to the FBI in Washington, D.C. On January 15,

---

[1] Video of the interview is available at https://chicago.cbslocal.com/2021/01/08/brad-rukstales-of-inverness-arrested-at-u-s-capitol-riot-apologizes-and-expresses-embarrassment/.

2021, he was charged by an initial information with four misdemeanor counts. On January 21, 2021, Rukstales was charged by an Amended Information with four counts, violations of 18 U.S.C. §§ 1752(a)(1) and (2), and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On August 31, 2021, he pleaded guilty to Count Four of the Amended Information, which charged a violation of 40 U.S.C. § 5104(e)(2)(G). In his plea agreement, Rukstales agreed to pay $500 in restitution to the Department of the Treasury.[2]

### III.   Statutory Penalties

Rukstales now faces sentencing on a single count of 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, he faces up to six months of imprisonment and a fine of up to $5,000. Rukstales must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559(a)(7); U.S.S.G. §1B1.9.

### IV.   Sentencing Factors Under 18 U.S.C. § 3553(a)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). Some of the factors this Court must consider include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6).

---

[2] The actual payee of the restitution should be the Architect of the Capitol, as indicated in the Presentence Report ("PSR") at 7.

### A.  The Nature and Circumstances of the Offense

The attack on the Capitol on January 6, 2021, is a criminal offense unparalleled in American history.  It represented a grave threat to our democratic norms; indeed, it was one of the only times in our history when the building was literally occupied by hostile participants.  By its very nature, the attack defies comparison to other events.  So too does the conviction this defendant now faces.  Picketing, demonstrating, or parading at the Capitol as part of the riot on January 6 was not like picketing at the Capitol some other day, without other or with relatively few rioters present.

Indeed, this Court, in considering the nature and circumstances of the misdemeanors charged under 18 U.S.C. §§ 1752(a)(1) and (a)(2) and 40 U.S.C. §§ 5104(e)(2)(D) and (e)(2)(G) for another defendant arrested in the CVC, recognized:

> This isn't a case where the defendant is alleged to have simply trespassed into an empty government building or explored a restricted area in a reckless way. . . . [The defendant's] participation in storming the Capitol on January 6th is far more serious than the statutory offenses charged.  His participation demonstrates disregard for the rule of law, a democratic process, and a peaceful transition of power.

*United States v. Michael Thomas Curzio*, 21-cr-0041 (CJN), Tr. 3/9/2021 at 28 (hearing on defendant's motion to vacate pretrial-detention order) (statement of Judge Nichols).

All defendants should be sentenced based on their individual conduct.  But this Court should note that each individual person who entered the Capitol on January 6 did so under the most extreme of circumstances, and Rukstales is no exception. As individuals entered the Capitol, they would—at a minimum—have crossed through numerous barriers and barricades and heard the throes of a mob.  Depending on the timing and location of their approach, they also may have observed extensive fighting with law enforcement and smelled chemical irritants in the air.

16

Additionally, while looking at a defendant's individual conduct, we must assess such conduct on a spectrum. This Court, in determining a fair and just sentence on this spectrum, should look to a number of critical factors, including: (1) whether, when, and how the defendant entered the Capitol building; (2) whether the defendant engaged in any violence or encouraged violence; (3) whether the defendant engaged in any acts of destruction or encouraged destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored, law enforcement; and (9) whether the defendant otherwise exhibited evidence of remorse or contrition.  While these factors are not exhaustive or dispositive, they help to place each individual defendant on a spectrum as to their fair and just punishment.

While everyone who breached the Capitol bears responsibility for the attack, there were instances where some rioters had the decency to admonish others not to be violent or destructive. *See, e.g., United States v. Munchel,* 991 F.3d 1273, 1276 (D.C. Cir. 2021) (Munchel told other rioters "don't break sh__" and "no vandalizing sh__," among other things); *United States v. Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 34 (in considering evidence of another CVC rioter, Court found, "There's actually evidence that Mr. Gallgher [*sic*] actively discouraged property destruction while inside of the Capitol, admonishing another person to set down a chair rather than throw it.").  That is not the case with Rukstales, whose actions were decidedly indecent.

As Rukstales descended the stairwell to the CVC—less than 30 seconds after besieged officers were forced to hastily retreat down it—chairs that had been thrown at those officers lay strewn about the floor.  There were signs of a violent riot everywhere, and he willingly joined it.

He picked up one of the chairs and belligerently hurled it in the direction of where the officers had fallen back.

To exacerbate his destructive conduct, Rukstales proceeded to the area where officers formed their defensive line. After officers issued commands for rioters to leave and began making arrests, a melee broke out between officers and rioters. While some quickly fled the scene, Rukstales did not leave the area; he remained in the thick of that bedlam. At one point, an officer darting to another area in the CVC appeared to brush up against Rukstales from behind, and Rukstales's left arm extended in the direction of that officer. While the government cannot definitively characterize Rukstales's gesture as aggressive, his action drew the officer's attention, and the officer immediately brought Rukstales to the floor.

The officer tried multiple times to bring Rukstales to his feet, but Rukstales remained on the floor. Another rioter attempted to pull Rukstales away from the officer until a second officer shooed him away. The first officer continued to try to pull Rukstales up to his feet, but Rukstales still stayed on the ground. At one point, Rukstales's red hat fell off, and he appeared more concerned with retrieving his hat than complying with the officer's attempts to get him to stand up. Ultimately, a third officer needed to respond, and he and the first officer grabbed Rukstales by his clothing and dragged him several yards to the end of the corridor to be arrested.

In sum, it took at least three officers to effectuate the arrest of Rukstales. The rioters' ability to overtake law enforcement on January 6 was a result of law enforcement being dramatically outnumbered. Rukstales directly contributed to that by necessitating at least three officers to get him under control during a volatile point in the overall attack on the Capitol. In addition, his conduct exacerbated the melee and concern of officers by virtue of other rioters approaching him while he was defying the officers' commands.

The USCP officer who processed Rukstales's arrest stated Rukstales was compliant post-arrest.  In addition, on January 7, 2021, Rukstales issued a statement on Twitter admitting he exercised "extremely poor judgment" by entering the Capitol, that his entry was "wrong," and he was "deeply regretful."  In his interview with the local news station, also on January 7, he said the violence that occurred was "terrible" and again expressed "regret."  But he also claimed that he merely entered the building "to see what was taking place inside," a claim belied by his enthusiastic participation in the riot and his baneful behavior in the CVC.  And his interview comments about "being in the wrong the place at the wrong time" and that he "had nothing to do with charging anybody or anything" severely underplayed his galling conduct.

He further stated on Twitter, "Without qualification and as a peaceful and law-abiding citizen, I condemn the violence and destruction that took place in Washington."  While his condemnation of the violence and destruction was appropriate, he neglected to mention his own disgraceful conduct of hurling a chair and failing to comply with the officer's multiple attempts to bring him to his feet.  This conduct was the exact opposite of "peaceful and law-abiding." His hurling of the chair was a belligerent action.  It was not tossed in a manner as if to get it out of the way or because he was concerned for the safety of others.  And his noncompliance with the officers added to an already-chaotic situation.

 Accordingly, the nature and circumstances of the offense establish the need for a sentence of incarceration in this matter.

### B.  The History and Characteristics of the Defendant

As set forth in the PSR, Rukstales does not have a prior criminal conviction.  PSR at 8.  He would likely have zero points if the Sentencing Guidelines did apply to his offense of conviction.

USSG § 4A1.2(c)(2).  Accordingly, he would be in Criminal History Category I. USSG §§ 4A1.1, 5A.

The PSR also notes that Rukstales has attained a master's degree, was a successful businessman, and has lived a life free of apparent economic hardship or family strife.   With these advantages in his background, he knew better than to join a mob in breaching the Capitol, hurl a chair in the CVC, and further beleaguer outnumbered and endangered police officers.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the Capitol building and grounds, and all that it involved, was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[3] As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases arising out of the riot on January 6, 2021, including misdemeanor cases.  *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-00238 (TFH), Tr. 8/4/2021 at 3 (As Judge Hogan noted, "As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually – should be expected.")  This specific factor weighs in favor of incarceration, especially for a defendant like Rukstales who brazenly engaged in disorderly conduct inside the Capitol.

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this

---

[3] FBI Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021) (hereinafter "FBI Director Wray's Statement"), available at:
 https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20Testimony.pdf.

defendant. 18 U.S.C. § 3553(a)(2)(B-C); *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010). The demands of general deterrence weigh in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol.  Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration.  For the violence at the Capitol on January 6 was cultivated to interfere, and did interfere, with one of the most important democratic processes we have: the transfer of power. As noted by Judge Moss during sentencing in *United States v. Paul Hodgkins*, 21-cr-00188 (RDM):

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble. The damage that [the defendant] and others caused that day goes way beyond the several-hour delay in the certification. It is a damage that will persist in this country for decades.

Tr. 7/19/2021 at 69-70.  Indeed, the attack on the Capitol means "that it will be harder today than it was seven months ago for the United States and our diplomats to convince other nations to pursue democracy. It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation." *Id.* at 70; *see also Gallagher,* Tr. 10/13/2021 at 37 ("As other judges on this court have recognized, democracy requires the cooperation of the citizenry.  Protesting in the Capitol, in a manner that delays the certification of the election, throws our entire system of government into disarray, and it undermines the stability of our society. Future would-be rioters must be deterred.") (statement of Judge Nichols at sentencing).

The gravity of these offenses demands deterrence.  This was not a protest.  *See id.* at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.").  And it is important to convey to future rioters and would-be mob participants—especially those who intend to improperly influence the

democratic process—that their actions will have consequences.  There is possibly no greater factor that this Court must consider.

There is also a strong need for specific deterrence here.  Rukstales was an eager participant in the Capitol riot, which his appalling behavior in the CVC made clear.  He made a spectacle of himself by throwing a chair in the direction of police officers and needed to be dragged several yards, by multiple officers, so they could arrest him. While he expressed some remorse for his conduct, his prior statements of regret minimized his disruptive conduct, which remains deeply troubling.

Both the need to deter generally and to deter Rukstales specifically favor incarceration in this case.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful-entry misdemeanors, to assault on law-enforcement officers, to conspiracy to corruptly interfere with Congress. Each offender must be sentenced based on her or his individual circumstances, but with the backdrop of January 6 in mind. Moreover, each offender's case will exist on a spectrum that ranges from conduct meriting a probationary sentence to crimes necessitating years of imprisonment. The misdemeanor defendants will generally fall on the lesser end of that spectrum, but misdemeanor breaches of the Capitol on January 6, 2021, were not minor crimes.   A probationary sentence should not necessarily become the default.[4]

---

[4]  Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation, including in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164(RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097(PFF); and *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC). The government is abiding by its agreements in those cases, but has made no such agreement in this case. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those

Indeed, the government invites the Court to join Judge Lamberth's admonition that "I don't want to create the impression that probation is the automatic outcome here because it's not going to be." *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19; *see also United States v. Valerie Ehrke*, 1:21-cr-00097(PFF), Tr. 9/17/2021 at 13 ("Judge Lamberth said something to the effect . . . 'I don't want to create the impression that probation is the automatic outcome here, because it's not going to be.' And I agree with that. Judge Hogan said something similar.") (statement of Judge Friedman).

Here, to avoid unwarranted sentencing disparities, the Court should also consider the sentence imposed on Thomas Gallagher, Cindy Fitchett, and Douglas Sweet, three of Rukstales's other codefendants arrested in the CVC whom this Court either sentenced previously or will sentence shortly before Rukstales's sentencing date. In each of those codefendant cases, the government requested probationary sentences with anywhere from one to three months of home detention.  The Court sentenced Gallagher to two years of probation (with other conditions) on October 13, 2021, and Fitchett and Sweet are set to be sentenced on November 9, 2021.  The primary difference between Rukstales and these other CVC codefendants is that none of the others engaged in wantonly violent conduct such as throwing a chair in the CVC and not complying with an officer's attempts to get up from the floor.[5]

After a review of the applicable § 3553 factors, the government believes that a 45-day term of incarceration and the agreed-upon restitution, is appropriate.

---

who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

[5] This Court also sentenced an additional CVC codefendant, Michael Curzio, on July 12, 2021.  Curzio, who received the statutory maximum sentence of six months of incarceration for the same offense for which Rukstales has pleaded guilty, is not an apt case for comparison due to Curzio's significant criminal history and because he had been detained for nearly the entire six months.

## V.    <u>Conclusion</u>

Sentencing here requires that the Court carefully balance the various factors set forth in 18 U.S.C. § 3553(a).  As detailed above, most of those factors support a sentence of incarceration for Rukstales.   Balancing these factors, the government recommends that this Court sentence Rukstales to 45 days of incarceration and $500 in restitution.   Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing a modest term of incarceration as a consequence of his behavior, while recognizing his early acceptance of responsibility.

Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY

By:    */s/ Seth Adam Meinero*
SETH ADAM MEINERO
Trial Attorney
Detailee
United States Attorney's Office for the
  District of Columbia
D.C. Bar No. 976587
202-252-5847
Seth.Meinero@usdoj.gov

*/s/ Susan Lehr*
SUSAN LEHR
Assistant United States Attorney
Detailee
United States Attorney's Office for the
  District of Columbia
Nebraska Bar No. 19248
402-661-3700
Susan.Lehr@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 4, 2021, I served a copy of the foregoing on all parties to this matter as listed in the Court's Electronic Case Files system.

*/s/ Seth Adam Meinero*
SETH ADAM MEINERO
Trial Attorney
Detailee